UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES DURHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-505-RLY-TAB |
| ) | |
| MICHAEL MITCHEFF, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Charles Durham, an inmate at the Pendleton Correctional Facility, brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that defendant Dr. Michael Mitcheff was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Defendant Dr. Mitcheff moves for summary judgment. Mr. Durham filed a response in opposition on July 28, 2015. For the reasons set forth below, the defendant's motion for summary judgment is **denied**.

**I. Factual Background**

The court finds the following facts to either be undisputed, or found in the light most favorable to Mr. Durham.

At the time of the events in question, Dr. Mitcheff was the Regional Medical Director for Corizon Health, Inc., which contracts to provide medical care for the inmates incarcerated at the various Indiana Department of Correction ("IDOC") facilities. [Filing No. 21-1, at ECF p. 2]. As the Regional Medical Director, Dr. Mitcheff was not involved with the day to day medical care of inmates. Rather, he evaluated requests for medical services and consultations that could not be provided at the facilities. To make such evaluations, Dr. Mitcheff reviewed an inmate's electronic medical records to provide a second opinion and recommendation as to whether the suggested

procedure or consultation was medically necessary. Dr. Mitcheff only made recommendations regarding courses of treatment and did not dictate the medical treatment an inmate was to receive. A medical provider was not bound by Dr. Mitcheff's medical recommendations and could proceed with any treatment he or she felt was medically required. [Filing No. 21-1, at ECF p. 2].

In October of 2012, while an inmate at the Pendleton Correctional Facility, Mr. Durham contracted a skin condition he described to medical personal as itchy, dry skin. He also exhibited a rash on his face that appeared as dry, scaling skin. [Filing No. 1, at ECF p. 3; Filing No. 21-2, at ECF pp. 2-4]. The nurse practitioner prescribed the topical cream, Temovate for the rash and coal tar shampoo [Filing No. 21-2, at ECF pp. 2-4; Filing No. 35-1, at ECF p. 5].

In February of 2013, Mr. Durham complained to medical personal that his condition had worsened and that he had dry, dark spots on his face. [Filing No. 21-2, at ECF pp. 5-6; Filing No. 35-1, at ECF p. 14]. He alleged the spots were caused by the cream he was prescribed [Filing No. 21-2, at ECF pp. 7]. On February 28, 2013, Mr. Durham was examined by Dr. William Wolfe for his skin complaints. Dr. Wolfe noted that Mr. Durham exhibited small hyperpigmented areas of skin that blended into his normal skin color. The exam did not reveal any signs of infection and showed that Mr. Durham's earlier lesions and hair loss had stopped. Dr. Wolfe prescribed Trimcinolone. [Filing No. 21-1, at ECF p. 3, Filing No. 21-2, at ECF pp. 7-9].

On March 15, 2013, Dr. Wolfe again examined Mr. Durham regarding the hyperpigmented areas on his face. Dr. Wolfe noted that the hyperpigmented areas blended into Mr. Durham's normal skin color and that the previously infected areas on his face and areas of hair loss had cleared up. Dr. Wolfe informed Mr. Durham that the hyperpigmentation was an after-effect of his previous skin infection and would clear up in time. [Filing No. 21-1, at ECF pp. 3-4, Filing No. 21-2, at ECF pp. 13-15]. Mr. Durham requested bleaching cream for his face. His request was

denied as bleaching cream was no longer available within the IDOC. He was advised to try cocoa butter lotion. [Filing No. 21-1, at ECF p. 4, Filing No. 21-2, at ECF pp. 15-18]. In March and April of 2013, Mr. Durham submitted six health care requests for a non-steroid face cream. [Filing No. 35-1, at ECF p. 19; Filing No. 35-1, at ECF p. 21; Filing No. 35-1 at ECF p. 25; Filing No. 35-1 at ECF p. 26; Filing No. 35-1, at ECF p. 28; Filing No. 35-1, at ECF p. 34]. He complained that his skin condition was getting worse.

On April 8, 2013, Dr. Wolfe ordered Mr. Durham Sensicare, which is a petrolatum and zinc oxide skin protectant. [Filing No. 21-1, at ECF p. 4, Filing No. 21-2, at ECF pp. 13-19].

On April 23, 2013, Mr. Durham was seen by Nurse Janet Decker-Radford. He again alleged that his face was burned and darkened as a result of using Temorate and requested a bleaching agent. [Filing No. 21-1, at ECF p. 4]. She noted that Mr. Durham had a light rash and thickened, darkened skin around his forehead, cheeks, and lips. Nurse Decker-Radford also observed pinkness on Mr. Durham's nose and below his eyelids. She did not observe any drainage or open wounds, and recommended that Mr. Durham stop using any lotions or creams on his face, avoid the sun, and requested a consultation with a dermatologist. [Filing No. 21-1, at ECF pp. 4-5, Filing No. 21-2, at ECF pp. 21-22].

Dr. Mitcheff reviewed the nurse's recommendation for a consultation with a dermatologist. Dr. Mitcheff concurred with Dr. Wolfe's previous diagnosis of post-inflammatory hyperpigmentation resulting from earlier infections on his face and scalp. Post-inflammatory hyperpigmentation is not a serious or emergency medical condition and does not pose any negative effects to Mr. Durham's health. The condition is bothersome because it may cause itching, tightness and discoloration of the skin. This condition will resolve itself by lightening over time.

As such, Dr. Mitcheff determined a consultation with a dermatologist was not necessary. [Filing No. 21-1, at ECF p. 5].

On May 15, 2013, Dr. Wolfe examined Mr. Durham because he complained of dryness and tightness of his skin on his cheeks and forehead. Dr. Wolfe examined him and did not notice any scaling of the skin and stated that hydroquinone (Eldoquin Forte), a skin lightener, would be tried to treat Mr. Durham's complaints. [Filing No. 21-2, at ECF pp. 31-34; Filing No. 21-2, at ECF p. 39]. Hydroquinone cream is a cosmetic ointment to treat skin appearance. It does not treat any acute, serious or emergent medical condition. As such, it is not on the formulary of medications approved for use by the IDOC. [Filing No. 21-1, at ECF p. 6].

With regard to medications not on the IDOC formulary, notification of a prescription is submitted to Dr. Mitcheff for review and consultation. Dr. Mitcheff provides feedback, including a suggestion for alternative treatment, if appropriate. Dr. Mitcheff does not approve or deny a prescription of non-formulary medications and it remains on the treating physician to determine the appropriate course of treatment. [Filing No. 21-1, at ECF p. 6]. Dr. Mitcheff determined that Hydroquinone cream was not medically required.

In August of 2013, Mr. Durham requested a consultation regarding his skin condition. [Filing No. 35-2, at ECF p. 69]. There was no indication by the nurse of any worsening in Mr. Durham's condition and Dr. Mitcheff maintained his original recommendation that a consultation with a dermatologist was unnecessary and the hyperpigmentation would resolve itself over time. [Filing No. 21-1, at ECF p. 7].

In October of 2013, Mr. Durham was provided the hydroquinone cream. Soon after, Mr. Durham reported that the cream did not work and made his skin condition worse. [Filing No. 35-3, at ECF pp. 3]. On November 11, 2013, Mr. Durham was seen by Dr. Person. Dr. Person noted

that the skin on Mr. Durham's face was very dark compared to the skin on the rest of his body, and was tight and rough to the touch. [Filing No. 21-2, at ECF pp. 75]. Dr. Person added that the various skin creams Mr. Durham was prescribed did not improve his hyperpigmentation. Dr. Person submitted a request for Mr. Durham to receive a consultation with a dermatologist [Filing No. 21-1, at ECF p. 8]. In the consultation notes to Dr. Mitcheff, Dr. Person stated that Mr. Durham has been on "virtually every cream/moisturizer available without improvement" and that the "skin on the face is VERY dark compared to remainder of skin, very tight and rough to palpation" and that the physical exam revealed a "light rash, thickening to the layer of skin per forehead, cheeks, and chin." [Filing No. 21-2, at ECF pp. 71-75]. Thirty minutes after Dr. Person sent this email, Dr. Mitcheff responded "[t]his is cosmetic only. ATP continue onsite conservative trt MM." [Filing No. 21-2, at ECF p. 74]. Dr. Mitcheff determined a consultation with a dermatologist was unnecessary because Mr. Durham's condition was cosmetic and would resolve over time. [Filing No. 21-1, at ECF p. 8; Filing No. 21-2, at ECF p. 74]. Throughout his treatment for the skin condition, Mr. Durham complained of pain and that his face was "burned' by the medication he had been prescribed. [Filing No. 35, at ECF p. 5; Filing No. 35-1, at ECF p. 33; Filing No. 35-1, at ECF p. 36; Filing No. 35-2, at ECF p. 3; Filing No. 35-2, at ECF p.7; Filing No. 35-2, at ECF pp. 12-13].

     Mr. Durham submitted multiple health care requests complaining of pain from December of 2013 through February of 2015. [Filing No. 35-3, at ECF p. 39; Filing No. 35-4, at ECF p. 6]. Since November of 2013, Mr. Durham has been evaluated and has received treatment, including creams, soaps, and Tegretol to treat his repeated complaints of pain. [Filing No. 21-1, at ECF p. 9]. Mr. Durham stated during an examination that he did not take the Tegretol for the pain [Filing No. 35-4, at ECF p. 25].

On July 31, 2014, Mr. Durham submitted a health care request stating that he was experiencing anxiety and depression because of the damage to his face. [Filing No. 35-5, at ECF p. 29].

According to Dr. Mitcheff, Mr. Durham's skin condition, hyperpigmentation, is not a serious or emergency medical condition. He suffers from hyperpigmentation as a result of an infection and inflammation dating back to 2012. This condition is cosmetic and does not pose a risk of harm to his health.

Mr. Durham contends that he suffered from a serious skin condition, medical personal diagnosed his skin condition as mandating treatment, and that he was subjected to both ineffective treatment and the denial of treatment by Dr. Mitcheff.

## II. Legal Analysis

### A. Standard of Review

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256 (7th Cir. 2011). To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.,* 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment

as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

**B. Section 1983**

Mr. Durham claims that the defendant was deliberately indifferent to his serious medical needs and denied him medical care for his skin condition when he refused multiple recommendations by medical staff that he be seen by a dermatologist. To support a claim that there has been a violation of this right, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, the objective prong requires that "the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)). An objectively serious medical condition "is one that 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 (7th Cir. 2009) (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). Serious conditions include those that significantly affect the person's daily activities, feature chronic and substantial pain, or could result in further significant injury or unnecessary pain if left untreated. *Gutierrez,* 111 F.3d at 1373.

As to the second element, "[t]o show deliberate indifference, [Mr. Durham] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009). This

requirement is satisfied when a prison official "fail[s] to act despite his knowledge of a substantial risk of serious harm" to a prisoner. *Farmer v. Brennan,* 511 U.S. 825, 841 (1994). The defendant argues that Mr. Durham did not have an objectively serious medical condition.

A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). Adequate medical care may involve care that the prisoner disagrees with; this disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *Id.* (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment," *id.* (citing *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) and *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008)).

**C. Serious Medical Condition**

The record viewed in a light most favorable to Mr. Durham reflects that throughout the course of his treatment for hyperpigmentation, Mr. Durham experienced little, if any, improvement to his condition. Mr. Durham submitted multiple health care requests complaining of pain to his face as a result of hyperpigmentation, and was prescribed pain medication to treat these complaints. Serious medical conditions include those that cause substantial pain. *Gutierrez,* 111 F.3d at 1373. Based on the medical records, the facts show that Mr. Durham stated to medical staff, over an extended period of time, that he was experiencing pain as a result of his medical condition. This is sufficient to raise an issue of fact whether Mr. Durham suffered from an objectively serious

medical condition. Dr. Mitcheff's motion for summary judgment as it relates to the objective component of whether Mr. Durham suffered from a serious medical condition is **denied**.

**D. Deliberate Indifference**

The court turns to Mr. Durham's claim that Dr. Mitcheff was deliberately indifferent to his serious medical need when he denied two recommendations by medical staff that Mr. Durham see a dermatologist for his painful skin condition. An examination of the record shows that Nurse Decker-Radford and Dr. Person recommended a consultation with a dermatologist. Dr. Mitcheff denied both recommendations stating hyperpigmentation is not a serious or emergency medical condition. The evidence most favorable to Mr. Durham shows that the nurse and the physician who were in charge of his medical care, physically examined him, and personally observed his medical condition on multiple occasions, recommended that he be seen by a dermatologist. In contrast, Dr. Mitcheff, who is not a dermatologist, never personally examined Mr. Durham or observed his skin condition. In response to Nurse Decker-Radford's recommendation that Mr. Durham be examined by a dermatologist, Dr. Mitcheff replied "it sounds like post inflammatory hyperpigmentation which will lighten in time. This is why we don't treat minor rashes." [Filing No. 35-1, at ECR p. 40]. Similarly, Dr. Person reported that Mr. Durham's skin condition had not improved despite treatment, was very tight and rough to the touch and was accompanied by a light rash and a thickening to the layer of skin on his forehead, cheeks, and chin. Dr. Mitcheff opined, without an examination, that the condition was cosmetic only.

It is the district court's role to determine whether expert testimony will be considered by the court. *Rowe v. Gibson*, 2015 WL 4934970 (7th Cir. August 19, 2015). Here, Dr. Mitcheff has provided a declaration that Mr. Durham's skin condition is cosmetic only. However, Nurse Decker-Radford and Dr. Person both reported that Mr. Durham had a light rash with thickened,

darkened skin around his forehead, cheeks, and chin. Based on this, both recommended that Mr. Durham be examined by a dermatologist. Moreover, Mr. Durham submitted multiple heath care requests complaining that his skin condition was painful, and was prescribed a pain medication at one point. The court views Dr. Mitcheff's opinion that Mr. Durham's condition was cosmetic as conclusory. Dr. Mitcheff cites no medical evidence to support the notion that an individual with a skin condition described by other medical professionals as very tight and rough to palpation with a light rash and thickening to the layer of skin on his forehead, cheeks, and chin as merely cosmetic. As the gatekeeper of expert testimony, the court may reject his opinion as insufficient to remove any issue of fact.  Here the court does so.

Dr. Mitcheff's motion for summary judgment is **denied**.

### III. Conclusion

The defendant's motion for summary judgment [dkt. 19] is **denied.** The issue as to whether Mr. Durham's medical condition is objectively serious and whether Dr. Mitcheff was deliberately indifferent to a serious medical need will proceed to trial.

**IT IS SO ORDERED.**

Date: __9/28/2015_____          _____
                                  RICHARD L. YOUNG, CHIEF JUDGE
                                  United States District Court
                                  Southern District of Indiana

Distribution:

CHARLES DURHAM
111332
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Electronically registered counsel